

# In the Missouri Court of Appeals

# Eastern District

### DIVISION III

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100516 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Rex M. Burlison |
| ALVIN S. SPEARS, | ) | |
| | ) | |
| Appellant. | ) | Filed:  November 25, 2014 |

### Introduction

Appellant Alvin S. Spears, Jr. ("Spears") appeals from the judgment of the Circuit Court of the City of St. Louis ("trial court") finding him guilty of felony possession of a controlled substance and misdemeanor possession of a controlled substance.  Spears argues that the trial court erred in (1) allowing Officer Kenneth Allen's ("Allen") late endorsement as a witness for the State, (2) overruling Spears's motion to suppress oral statements he made to the arresting officers, Allen and Officer Adam Feaman ("Feaman"), as well as his objection to those statements at trial, and (3) overruling Spears's objection to the admission of two of the State's exhibits.  Spears further argues that the case should be remanded to the trial court with instructions to issue an order *nunc pro tunc* correcting the judgment form to remove all references to Spears being a prior and persistent offender.

The trial court did not abuse its discretion in permitting Allen's testimony because Spears suffered no genuine surprise as a result of the State's late endorsement of Allen as a witness. Because Spears's oral statements to Feaman and Allen were not made during a custodial interrogation and were spontaneous and voluntary in nature, the trial court did not clearly err in overruling Spears's motion to suppress or his objection at trial. Further, the trial court committed no error, plain or otherwise, by admitting State's Exhibits 2A and 2B into evidence because the evidence at trial established a sufficient chain of custody for the exhibits. Finally, we remand the case to the trial court with instructions to issue an order *nunc pro tunc* correcting the judgment form to remove all references to Spears being a persistent offender.

Factual and Procedural History

Around 5:00 p.m. on September 23, 2011, Feaman and Allen were conducting surveillance of a gas station in the City of St. Louis. Feaman and Allen were in an unmarked car, but were wearing police uniforms. Feaman and Allen observed Spears standing near his vehicle talking to another man. Spears removed an item from his pocket and showed it to the man, who shook his head and walked away. Spears then took a cigar, rolled something into it, and licked the paper to seal it. Another man walked across the parking lot, and Spears waved him over. The two men spoke briefly and Spears showed the man an item Spears had removed from his pocket. The man handed Spears money in exchange for the item and walked away.

At that point, Feaman and Allen drove their car onto the gas station parking lot and parked directly behind Spears's vehicle. Feaman and Allen got out of the car, approached Spears, and identified themselves as police officers. Before Feaman and Allen asked Spears any questions, Spears told the officers that he had some weed on him and had just rolled a blunt that he was about to smoke. Because Spears admitted to committing a crime, Feaman handcuffed

2

him.  Spears became agitated and said that he wanted the officers to "work with him" and let him go.  Spears then told Feaman and Allen  to take the marijuana and blunt out of his front right shorts pocket.  As Feaman reached into Spears's pocket, Spears stated "damn, this game over.  I got some pills on me."  "Pills" is a street term for powdered heroin packaged in gel capsules. Feaman found two knotted plastic bags in Spears's front right shorts pocket.  One bag contained what Feaman believed to be marijuana, and the other bag contained gel capsules and a rolled cigar with what Feaman believed to be marijuana inside.

The officers placed Spears under arrest.  Feaman advised Spears of his Miranda[1] rights, which Spears stated he understood.  After Spears was placed in the officers' car, he told the officers that there was more heroin in his vehicle and a blender in the backseat.  Feaman recovered a knotted plastic bag with brownish chunks of apparent heroin and a blender with white residue in Spears's vehicle.  The chunks recovered from Spears's vehicle tested positive for heroin and weighed more than two grams.  The loose vegetation and the vegetation inside the cigar paper tested positive for marijuana, while the gel capsules tested negative for controlled substances.

The State charged Spears as a prior and persistent offender and prior drug offender with felony possession of a controlled substance and misdemeanor possession of a controlled substance.  The case was tried before a jury beginning on July 22, 2013.  Prior to trial, Spears filed a Motion to Suppress Evidence and Statements ("motion to suppress").  As grounds for his motion to suppress statements, Spears alleged that his statements were not voluntary, and that his custody and interrogation were "inherently coercive."  As grounds to suppress the physical evidence seized, Spears alleged that the officers' search and seizure were unlawful.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

3

A hearing was held on Spears's motion to suppress. At the suppression hearing, the knotted bag containing green vegetation suspected to be marijuana was labeled State's Exhibit 1A and the cigar containing suspected marijuana was labeled State's Exhibit 1B. State's Exhibit 2A was a gel capsule containing powder. Feaman testified that, other than the exhibits being opened for laboratory testing, the items appeared to be the same as when he seized them. The trial court denied the motion to suppress.

Feaman was the first witness to testify at trial. As Feaman began to testify regarding the statements Spears made to Feaman and Allen in the gas station parking lot, Spears objected, referencing his previously-filed motion to suppress. Specifically, Spears objected to the introduction of any and all statements made by Spears at the scene on the grounds that introduction of those statements would violate his constitutional rights under the Fifth, Sixth, Eight, and Fourteenth Amendments as well as the associated provisions of the Missouri Constitution. The trial court overruled the objection. Spears renewed this objection, on the same grounds, during Allen's subsequent testimony. The trial court again overruled the objection.

After Feaman finished testifying, the trial court announced that the State had filed a supplemental witness endorsement for Allen. Spears objected to the witness endorsement because Allen had not been previously endorsed, and was not listed as a witness in any pre-trial discovery documents. The State responded by noting that Allen had been listed as one of the two witnesses to the alleged crime in the police report that had been disclosed to Spears sixty days before trial, and that all of Allen's actions and statements about the case were listed in the report. The State informed the trial court that Allen's testimony would not include any new information. The trial court informed counsel for Spears that he would be given the opportunity to speak with Allen before he was called as a witness. The trial court then allowed the endorsement of Allen

4

as a trial witness, and took a recess to give Spears time to speak with Allen. Allen was called as a witness and testified as to the arrest of Spears, as well as Spears's subsequent written statement, which was taken upon returning to the police station.

At trial, the knotted bag containing green vegetation and the cigar containing green vegetation were labeled as States Exhibits 2A and 2B, respectively. Feaman again testified that he recognized the exhibits as the items he seized from Spears, and that the items were in the same condition as when he seized them, other than being opened for laboratory testing. The State moved to admit the exhibits into evidence. Spears objected by restating the objections advanced in his motion to suppress: "I just reiterate the objections we've already made with respect to statements and the introduction of further physical evidence obtained at the scene." The trial court overruled the objection and the exhibits were admitted into evidence. Later in the trial, as Christina Hayes ("Hayes"), a criminalist in the St. Louis Metropolitan Police Department Crime Lab, prepared to testify about the results of her tests on the exhibits, Spears objected to the lack of a proper chain of custody. The trial court overruled the objection. Hayes testified that Exhibit 2A was a sealed laboratory bag containing "an open knotted plastic bag and loose green vegetation," and that Exhibit 2B was a sealed laboratory bag containing "empty cigar paper and then loose green vegetation." Hayes testified that she tested the contents of both exhibits and they both contained marijuana. She testified that, other than being brought to court, the exhibits had been under the care, custody, and control of the crime lab.

At the close of evidence, Spears filed a motion for judgment of acquittal notwithstanding the verdict of the jury or, in the alternative, for a new trial. In support of his motion, Spears alleged, *inter alia*, that the trial court erred in 1) overruling his motion to suppress and his objections to Feaman and Allen's testimony about Spears's oral statements, 2) overruling his

5

objection to the introduction of the physical evidence of the marijuana and heroin seized at the scene, for the reasons set forth in the motion to suppress, and 3) overruling his objection to the State calling Allen as a witness. The trial court denied the motion.

At the close of trial, the trial court inquired about Spears's prior convictions. The State had alleged that Spears was a prior drug offender based on a 2006 conviction on two counts of distribution of a controlled substance. The State offered a certified record of that conviction. The trial court noted that the two offenses in the 2006 conviction were both committed on June 2, 2005, and found that the State had proved Spears was a prior drug offender.

The jury returned a verdict of guilty on both counts. A sentencing hearing was held on September 27, 2013. Spears was sentenced to concurrent terms of five years' imprisonment for felony possession of a controlled substance and 120 days' imprisonment for misdemeanor possession of a controlled substance. The trial court did not mention Spears's enhancement status when announcing his sentence for felony possession. However, on Spears's judgment form, boxes were checked indicating that Spears had been found to be a prior drug offender, a prior offender, and a persistent offender. This appeal follows.

Points on Appeal

Spears raises four points on appeal. In Point One, Spears contends that the trial court abused its discretion in allowing the State's late endorsement of Allen as a trial witness and overruling Spears's objection to Allen's testimony at trial. In Point Two, Spears avers that the trial court erred in overruling his motion to suppress the oral statements he made to Allen and Feaman, and admitting those statements into evidence at trial. In Point Three, Spears argues that the trial court abused its discretion in admitting State's Exhibits 2A and 2B at trial because the State failed to establish a sufficient chain of custody for the exhibits. In Point Four, Spears

6

argues that the trial court erred in classifying him as a prior and persistent offender on the judgment form when in fact the trial court only found Spears to be a prior drug offender.

Discussion

**I. The trial court did not abuse its discretion in permitting the late endorsement of Allen and overruling Spears's objection to Allen's testimony.**

In Point One, Spears posits that the trial court abused its discretion in permitting the late witness endorsement of Allen by the State because the late endorsement caused fundamental unfairness to Spears. More specifically, Spears argues that the late endorsement was fundamentally unfair because it caused him genuine surprise and prevented him from making meaningful efforts to consider and prepare a strategy to address Allen's testimony. In support of his claim of surprise, Spears notes that he did not have an opportunity to investigate Allen's credibility or to depose Allen. Spears argues that had he been able to depose Allen before trial, he would have been able to oppose Allen's endorsement by arguing that his testimony would be cumulative to Feaman's.

A trial court has broad discretion to allow the late endorsement of a witness. Melillo v. State, 380 S.W.3d 617, 624 (Mo. App. S.D. 2012). We will uphold a trial court's exercise of discretion absent an abuse of discretion. A trial court abuses its discretion if its ruling is so illogical, arbitrary, and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Id. Within the context of late endorsement of witnesses, a trial court abuses its discretion only where the admission of the evidence results in fundamental unfairness to the defendant. State v. Zetina-Torres, 400 S.W.3d 343, 353 (Mo. App. W.D. 2013). In determining whether a late endorsement constitutes an abuse of discretion, we consider four factors: whether (1) the defendant waived the objection; (2) the State intended to surprise the defendant, or acted deceptively or in bad faith with the intention of causing disadvantage; (3) the

7

defendant was, in fact, surprised and suffered disadvantage; and (4) the type of testimony presented might have been readily contemplated by the defendant. State v. Fassero, 307 S.W.3d 669, 675 (Mo. App. E.D. 2010).

The record does not support a conclusion that the State intended to surprise Spears or acted in bad faith with its late endorsement of Allen. Allen's identity as one of the police officers involved in Spears's arrest was fully disclosed to Spears well before trial, even though Allen was not formally endorsed as a trial witness. Allen was identified in the police report, which Spears admits he received sixty days prior to trial. Nonetheless, Spears argues that he suffered actual surprise and subsequent disadvantage from the late witness endorsement. We are not persuaded. Given the identity of the witness, as well as the nature of his testimony, we cannot conclude that the trial court abused its discretion in finding no surprise or unfairness. Spears was fully aware of Allen's identity and relevance to his prosecution from the police report. Spears should not have been surprised when the second of two arresting officers was called as a witness. In fact, it appears that Spears anticipated Allen being called as a witness even before the State made its late endorsement because during Spears's opening argument, Spears stated that the jury would "hear the testimony of two police officers." Nor are we persuaded that Spears was prejudiced because he was unable to depose Allen. Given Allen's role in Spears's arrest, Spears could have readily contemplated that his testimony would largely mirror Feaman's.

The cases cited by Spears in support of his contention that he suffered surprise as a result of the State's late endorsement of Allen as a witness are readily distinguishable. In State v. Spencer, the late witness was the defendant's mother whose testimony provided "surprise motive evidence" against the defendant, and whose statement to police was not disclosed to the defense

8

until the trial had begun.  State v. Spencer, 49 S.W.3d 221 (Mo. App. S.D. 2001).  In State v. McIntosh, the court noted the fundamental unfairness to the defendant when the trial court allowed the endorsement and testimony of a previously-unknown witness made known to the defendant only four days prior to trial.  State v. McIntosh, 673 S.W.2d 53 (Mo. App. W.D. 1984).

Here, although the State endorsed Allen on the first day of trial, the witness endorsement did not surprise the defense with an unknown piece of evidence, testimony containing previously-unknown facts, or a previously-unknown witness.  To the contrary, the State endorsed and called a witness who Spears knew was involved in his arrest, who was readily available to interview before trial, and whose testimony was unsurprising in its content.  Because the late endorsement of Allen by the trial court did not prejudice Spears or cause him fundamental unfairness, the trial court did not abuse its discretion in overruling Spears's objection to Allen's endorsement and testimony.  Point One is denied.

**II. The trial court's denial of Spears's motion to suppress statements and allowing the admission of those statements at trial was not clearly erroneous.**

Spears argues in Point Two that the trial court erred in admitting the oral statements he made to Feaman and Allen both before and after his arrest because the statements were made involuntarily.  Spears claims that his initial oral statements were made during a custodial interrogation prior to being advised of his Miranda rights.  Spears posits that the oral statements he made to the officers after he was arrested and advised of his Miranda rights were fruits of the poisonous tree of his initial custodial interrogation.

**A.  Spears's claim as to Point Two is properly preserved for appeal.**

Before considering the merits of Spears's argument, we first address the State's contention that Spears's claim is not properly preserved for appeal.  The State argues that

9

Spears's second point on appeal presents, for the first time, a theory not included in his motion to suppress. We disagree.

In order to preserve an objection to evidence for appellate review, a specific objection must be made to the introduction of the evidence and the allegations of error must be included in a motion for new trial. State v. Barnes, 245 S.W.3d 885, 893 (Mo. App. E.D. 2008). Further, "the point raised on appeal must be based upon the same theory" as the specific objection. State v. Moore, 303 S.W.3d 515, 522-23 (Mo. banc 2010). Here, Spears's motion to suppress and objection at trial raised specific objections to the admission of the oral statements. Spears's claim on appeal is based upon the same theory. In his motion to suppress, Spears alleged that his statements were not voluntary, and that his custody and interrogation were "inherently coercive." At trial, Spears objected to both Feaman and Allen's testimony regarding his oral statements by objecting pursuant to his motion to suppress and asserting that the admission of any oral statements made by Spears would be a violation of his constitutional rights under the Fifth, Sixth, Eight, and Fourteenth Amendments as well as the associated provisions of the Missouri Constitution. Spears reiterated this same argument in his motion for a new trial. The record does not reveal a new theory presented for the first time on appeal. Spears's claim as to Point Two is preserved for review.

**B. The trial court's admission of Spears's statements into evidence was not clearly erroneous.**

We will reverse the trial court's ruling only if it is clearly erroneous. State v. Sund, 215 S.W.3d 719, 723 (Mo. banc 2007). We view the evidence in the light most favorable to the trial court's decision, and we defer to the trial court's judgment concerning conflicts in the evidence and the credibility of witnesses. Id.

10

Spears argues his pre-<u>Miranda</u> oral statements should have been suppressed because he made the statements to Allen and Feaman while being custodially interrogated. Spears suggests that he was in custody and being interrogated by Feaman and Allen when he made his initial statements because the officers walked up to him and identified themselves as police officers. Spears reasons that the officers approached him in a manner so as to intimidate him, and that once the officers approached him, he reasonably could believe that he was not free to end the interaction. We disagree.

Statements obtained during a custodial interrogation not preceded by <u>Miranda </u>warnings are subject to suppression at trial. <u>State v. Stover</u>, 388 S.W1`.3d 138, 155 (Mo. banc 2012). Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody." <u>Id.</u> Thus, there are two components to a custodial interrogation: custody and interrogation. An individual is only in custody for purposes of a custodial interrogation if he or she is either formally arrested or is subjected to "arrest-like restraints." <u>State v. Glass</u>, 136 S.W.3d 496, 509 (Mo. banc 2004). Interrogation includes express questioning and its functional equivalent; that is, any words or actions the police should know are reasonably likely to elicit an incriminating response. <u>State v. Atchison</u>, 258 S.W.3d 914, 917 (Mo. App. S.D. 2008).

It is not disputed that at the time Spears made his initial oral statements admitting to possessing marijuana and a blunt, he was not under formal arrest. Nor does the record support a finding that Spears was subject to any arrest-like restraint. Neither Feaman nor Allen restrained Spears or told him he was not allowed to leave. In fact, at the time Spears made the statements, Feaman and Allen had done nothing more than exit their vehicle, walk toward Spears, and identify themselves as police officers. It is immaterial that Spears may have subjectively

11

believed he was restrained from leaving; for custody to exist, a reasonable person in Spears's position would have to understand the situation to be one of custody. State v. Werner, 9 S.W.3d 590, 595 (Mo. banc 2000). We reject Spears's suggestion that a reasonable person in Spears's position would believe that he or she was in custody simply because two police officers approached and identified themselves. The record further supports a finding that Spears was not subjected to any interrogation by Feaman and Allen prior to making his pre-Miranda oral statements. The record shows that Feaman and Allen asked no questions of Spears as they approached him, and they did nothing more than identify themselves as police officers. This conduct is not an action that would reasonably elicit an incriminating response. Thus, Spears was neither in custody nor subjected to interrogation when he made his initial oral statements to Feaman and Allen.

Further, even if we were to find that Spears was in custody when he had made his initial oral statements to Feaman and Allen, it is well-settled that voluntary statements are not the product of interrogation, and therefore are not barred by either the Fifth Amendment or Miranda. Baumruk v. State, 364 S.W.3d 518, 532 (Mo. banc 2012). The record clearly reflects the spontaneous and voluntary nature of Spears's statements. The record shows that Spears spoke about possessing marijuana, a blunt, and pills without any prompting by Feaman and Allen. In particular, we note that even though Spears's statement regarding possessing pills was made after Spears was placed in handcuffs, the record reflects the statement was made voluntarily and spontaneously, and not in response to any questioning by the police officers. In fact, Feaman testified that Spears volunteered the information about the marijuana, blunt, and pills so immediately and rapidly that the officers did not have the opportunity to initially inform him of his Miranda rights.

12

Spears also argues that the trial court erred in admitting the oral statements he made to Feaman and Allen regarding the heroin and blender in his car after being arrested and advised of his <u>Miranda</u> rights. Spears claims these statements were fruits of the poisonous tree of his initial custodial interrogation. This claim also lacks merit. The record shows that Spears made these statements voluntarily, after being informed of his <u>Miranda</u> rights and indicating that he understood them. Accordingly, the trial court did not clearly err in overruling Spears's motion to suppress or his objection at trial. Point Two is denied.

## III. The trial court did not plainly err in admitting State's Exhibits 2A and 2B at trial.

Spears argues in Point Three that the trial court abused its discretion in admitting State's Exhibits 2A and 2B because the State failed to establish a sufficient chain of custody for the exhibits. Spears's argument as to chain of custody relates to the re-numbering of the exhibits used by the State at the suppression hearing when the State later introduced this same evidence at trial. Spears bases this claim on the fact that at the suppression hearing, Exhibit 1A was green vegetation, Exhibit 1B was cigar paper with green vegetation, and Exhibit 2A was a gel capsule and powder, but at trial, the green vegetation was labeled Exhibit 2A, the cigar paper was labeled 2B, and the gel capsule and powder was labeled Exhibit 1A.

### A. Point Three is not properly preserved for appeal.

The State contends that Spears's claim as to Point Three is not properly preserved for appeal because he did not object to the chain of custody at the time the exhibits were admitted into evidence. We agree. To properly preserve a challenge to the admission of evidence for appellate review, the objecting party must make a specific objection at the time of the attempted admission of the evidence. The objecting party must also include the error in a motion for a new trial. <u>State v. Cochran</u>, 365 S.W.3d 628, 632-33 (Mo. App. W.D. 2012). Failure to do so waives

13

the claim of error and makes it reviewable only under plain error review pursuant to Rule 30.20.[2] Id. at 633.

Spears argues for the first time on appeal that the trial court erred in admitting the exhibits because the State did not establish a sufficient chain of custody. Spears did not raise this specific objection when the exhibits were admitted at trial, nor did he raise it in his motion for a new trial. Instead, when the State moved to admit the exhibits into evidence, Spears simply repeated the objections raised in his motion to suppress. In his motion to suppress Spears alleged only that the physical evidence seized from Spears was the result of an unlawful search and seizure, and did not allege an insufficient chain of custody. Thus, Spears did not preserve his claim as to Point Three for appellate review.

**B. The trial court did not plainly err in admitting Exhibits 2A and 2B.**

Because Point Three is not properly preserved for appeal, we are limited to plain error review. Rule 30.20. Plain error is "evident, obvious and clear error." State v. Santillan, 1 S.W.3d 572, 578 (Mo. App. E.D. 1999). Relief is only available to a defendant "where the alleged error so substantially affects his or her rights that, if left uncorrected, manifest injustice or a miscarriage of justice inexorably results." State v. Louis, 103 S.W.3d 861, 864 (Mo. App. E.D. 2003).

We conclude that the trial court committed no error, much less plain error, by admitting State's Exhibits 2A and 2B into evidence because the testimony of Feaman and Hayes establishes a sufficient chain of custody. The State is required to establish that an exhibit it seeks to introduce into evidence is the same article and is in the same condition as when received by the State. State v. Clay, 817 S.W.2d 565, 567 (Mo. App. E.D. 1991). If an exhibit has been tested before being offered into evidence, the State must establish the exhibit's identity and that

---

[2] All rule references are to Mo. R. Civ. P. (2013).

the exhibit was in the same condition when tested as when seized.  State v. Bode, 125 S.W.3d

924, 929 (Mo. App. W.D. 2004).  The determination of whether a sufficient chain of custody has

been established is a matter within the sound discretion of the trial court.  State v. Pennell, 399

S.W.3d 81, 90 (Mo. App. E.D. 2013).  In making this determination, "proof of a chain of custody

does not require proof of hand-to-hand custody of the evidence or proof that eliminates all

possibility that the evidence has been disturbed."  Id.  The trial court may assume, absent a

showing of bad faith or tampering, that officials having custody of the exhibits properly

discharged their duties and that no tampering occurred.  Id.

Here, sufficient evidence was introduced from which the trial court, in its sound

discretion, could reasonably determine that a sufficient chain of custody existed for the exhibits,

and that any discrepancy between the labeling on the exhibits resulted from a simple re-

numbering of the exhibit bags between the suppression hearing and trial.  Feaman testified that

the exhibits were the same items and were in the same condition, other than being opened for

laboratory testing, at trial as when he seized the items from Spears.  Hayes testified that she

tested the exhibits, and that they had been under the exclusive custody and control of the crime

lab before being brought to court.  This evidence is sufficient to support a finding of the required

chain of custody.  See State v. Gott, 191 S.W.3d 113, 117 (Mo. App. S.D. 2006); State v.

Sammons, 93 S.W.3d 808, 810 (Mo. App. E.D. 2002).  Point Three is denied.

**IV. The trial court plainly erred in classifying Spears as a persistent offender.**

In Point Four, Spears argues that the trial court erred in classifying him as a prior and

persistent offender under Section 558.016[3] on the judgment form because the trial court only

found that he was a prior drug offender under Section 195.285.  Spears urges this Court to

---

[3] All statutory references are to RSMo. 2000.

15

remand the case to the trial court with instructions to issue an order *nunc pro tunc* correcting the judgment form to remove all references to Spears being a prior and persistent offender.

Because this issue was not properly preserved for appellate review,[4] Spears requests that this Court undertake plain error review. This Court may choose to review an issue for plain error affecting substantial rights if it decides manifest injustice or a miscarriage of justice has occurred. Rule 30.20. We conclude that the trial court plainly erred only in classifying Spears as a persistent offender on the judgment form.

Under Section 558.016.2, a prior offender is any offender who has pleaded guilty to or been found guilty of one felony. Section 558.016.2 The State presented evidence of one prior felony conviction, and the trial court expressly found that Spears was a prior drug offender, which is defined as anyone who "has been found guilty of any *felony* offense… relating to controlled substances." Section 195.275.1(1) (emphasis added). Thus, the trial court did not err in classifying Spears as a prior offender on the judgment form.

The trial court did, however, err in classifying Spears as a persistent offender. A persistent offender is defined as anyone who has pleaded guilty to or been found guilty of two or more felonies committed at different times. Section 558.016.3. While the State presented evidence that Spears pleaded guilty to two felonies, the crimes were committed on the same day and the State did not prove that the offenses were committed at different times.

Such errors are considered clerical mistakes which may be corrected by an order *nunc pro tunc*. State v. Taylor, 373 S.W.3d 513, 527 (Mo. App. E.D. 2012). Accordingly, we remand to the trial court with instructions to issue an order *nunc pro tunc* correcting the judgment form to remove all references to Spears being a persistent offender.

---

[4] Spears did not object to the classification at the time it occurred, nor did he include the issue in his motion for new trial.

16

## Conclusion

The judgment of the trial court is affirmed with respect to Points One, Two, and Three. The case is remanded to the trial court with instructions to issue an order *nunc pro tunc* correcting the judgment form to remove all references to Spears being a persistent offender.

Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

17